**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 25-CR-352-EGS** |
| | : | |
| **GEORGE CARR,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>

The defendant is a lifelong criminal who has never been held accountable for his actions. Whether he destroys property, steals, sexually assaults another, or threatens to kill innocent people, the result has always been the same for Mr. Carr: an extremely lenient sentence that does nothing to deter his unlawful behavior or protect the public.

Now, the defendant has pled guilty to his second robbery at just twenty-four years old. This time, however, the defendant—masked and armed—went into a commercial establishment with an unidentified co-conspirator and stole approximately two hundred dollars from the store's register. The defendant's conduct shows a complete disregard for the safety and wellbeing of others. And the offense confirms that he needs to be incapacitated for as long as possible to ensure that he cannot hurt anyone else in the future.

Accordingly, the United States requests a sentence of 63 months of incarceration followed by 3 years of supervised release.

## I.    <u>FACTUAL BACKGROUND</u>

On August 1, 2025, at approximately 6:00 p.m., the defendant and an unidentified co-conspirator, entered a Scott's Beauty Supply store in Washington, D.C., wearing masks. Shortly after entering, the defendant grabbed a store employee by the back of his shirt, pointed a handgun

at him, and ordered everyone in the store to lie on the ground.

The defendant then pressed the firearm to the back of the employee's head while the co-conspirator demanded that another store employee provide him with money from the store's cash register. The defendant and his co-conspirator ultimately obtained at least $200.00 in United States currency from the store's register before fleeing the establishment minutes later.

On October 2, 2025, the defendant agreed to speak with law enforcement after being arrested for the above offense. During that discussion, the defendant stated, among other things, that he: (i) was forced to do the August 1, 2025, robbery to repay a monetary debt; (ii) had a gun during the robbery while his co-conspirator did not; (iii) did not intend to shoot anyone during the crime; and (iv) and his co-conspirator got away with approximately $200.00 in United States currency from the store.

## II.    PROCEDURAL HISTORY

On September 30, 2025, a complaint was filed against the defendant, which charged him with violations of: (i) Interference with Interstate Commerce by Robbery and Conspiracy Thereof (18 U.S.C. § 1951(a)); and (ii) Using, Carrying, and Possessing a Firearm During a Crime of Violence (18 U.S.C. § 924(c)(1)(A)). (ECF No. 1).[1]

On December 9, 2025, the defendant pled guilty—pursuant to a plea agreement—to a one-count information, which charged him with Interference with Interstate Commerce by Robbery (18 U.S.C. § 1951(a)). (ECF Nos. 16, 20). On the same date, the Court set the defendant's sentencing for April 21, 2026.

On February 9, 2026, the Draft Presentence Investigation Report ("DPSIR") was filed with

---

[1] On October 1, 2025, the defendant was arrested on a warrant associated with this complaint. (ECF No. 5). He has been detained since that date.

2

the Court. (ECF No. 24). In the DPSIR, the probation officer calculated the defendant's: (i) base offense level to be a 23; (ii) criminal history score to be a 2; (iii) criminal history category to be a II; and (iv) estimated guideline range to be 51-63 months of imprisonment. *Id.* at 5, 24.

With respect to the defendant's criminal history score, the probation officer determined that three of the defendant's juvenile sentences—D.C. Superior Court Case Nos. 2019-DEL-00572, 2019-DEL-000670, and 2019-DEL-001309—were each worth zero points pursuant to U.S.S.G. § 4A1.2(e)(3). *Id.* This conclusion rested on an application of U.S.S.G. § 4A1.2(d)(2)(A), which states, among other things, that two points should be added for each juvenile sentence to confinement of at least sixty days if "the defendant was released from such confinement within five years of his commencement of the instant offense[.]" According to the probation officer's findings, the defendant's commitment to the Department of Youth and Rehabilitative Services ("DYRS") in each case did not amount to "confinement" for purposes of the applicable guideline. Furthermore, even if the defendant was "confined" within the DYRS, the defendant was released from such confinement beyond the applicable five-year window.[2]

On February 19, 2026, the United States asserted three objections to the DPSIR. (ECF No. 25). Among other things, the United States objected to the calculations for the defendant's criminal history score and his estimated guideline range.[3] *Id.* In particular, the United States argued that the three juvenile convictions mentioned above were undercounted, and that each should be

---

[2] Juvenile commitment at the DYRS is served in a combination of secured detention—the Youth Services Center and New Beginnings Youth Development Center—and residential placement, foster care, and/or group homes. (ECF No. 28 at 6 n.1).

[3] The United States also objected to a statement in the Offense Conduct portion of the DPSIR, which the probation officer removed from the Final Presentence Investigation Report. *See* (ECF Nos. 25, 28 at 4).

given two points pursuant to § 4A1.2(d)(2)(A), bringing the defendant's: (i) total criminal history score to an eight; (ii) criminal history category to a IV; and (iii) estimated guideline range to 70-87 months of imprisonment. *Id.* The defendant raised several objections to the DPSIR of his own, but he did not object to the probation officer's criminal history calculations or the estimated guideline range.

On March 6, 2026, the Final Presentence Investigation Report ("PSIR") was filed with the Court. (ECF No. 28). In the PSIR, the probation officer disagreed with the United States's objections, and adopted her original calculations contained in the DPSIR. *Id*. Thus, according to the PSIR, the defendant's estimated total offense level is 23, his criminal history category is II, and his guideline imprisonment range is 51 months to 63 months. *Id.* at 25. Moreover, the PSIR notes that, pursuant to 18 U.S.C. § 3583(b)(2), the Court may impose a term of supervised release of not more than 3 years.[4] *Id*.

### III.    LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

---

[4] For the reasons set forth below, the United States withdraws its objections regarding the defendant's criminal history scoring and the estimated guidelines range, and it agrees with the calculations contained within the PSIR.

*Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        (i) issued by the Sentencing Commission . . .; and
        (ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement –
    (A) issued by the Sentencing Commission . . . and
    (B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id*. A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id*. at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies

broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022); s*ee also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## IV.    **ARGUMENT**

The United States recommends that the Court sentence the defendant to 63 months of imprisonment followed by three years of supervised release. This sentence: (i) reflects the serious nature of the offense; (ii) addresses the defendant's troubling history and characteristics; (iii) promotes respect for the law; (iv) provides just punishment for the offense; (v) affords adequate deterrence to criminal conduct; and (vi) protects the public from further crimes of the defendant.

The United States will first address the applicable sentencing guidelines, and then it will discuss the sentencing factors set forth in 18 U.S.C. § 3553(a).

### A.  The Applicable Sentencing Guidelines

As noted in the Procedural History section above, the defendant pled guilty to a one-count information, which charged him with Interference with Interstate Commerce by Robbery, in

violation of 18 U.S.C. § 1951(a). (ECF Nos. 16, 20). In the plea agreement, the parties agreed to the following offense calculation for Count One:

| Count One: Interference with Interstate Commerce by Robbery (18 U.S.C. § 1951(a)) | | |
|---|---|---|
| Base Offense Level | 20 | U.S.S.G. § 2B3.1 |
| Firearm "Otherwise Used" | +6 | U.S.S.G. § 2B3.1(b)(2)(B) |
| Acceptance of Responsibility | -3 | U.S.S.G. §§ 3E1.1(a) and (b) |
| Total | | 23 |

*See* (ECF No. 20 at 2). The probation officer agreed with this offense calculation, which is reflected in the PSIR. (ECF No. 28 at 5).

In the plea agreement, the United States also estimated the defendant's criminal history score. (ECF No. 20 at 3). The defendant noted that he disagreed with the United States's calculations in this context, which are included below:

| Case Number | Jurisdiction | Offense(s) | Points |
|---|---|---|---|
| 2024-DVM-001632 | Washington, D.C. | Attempted Threats to do Bodily Harm (Misd.) | 1 point (U.S.S.G. § 4A1.1(c)) |
| 2019-DEL-001309 | Washington, D.C. | Aggravated Assault | 2 points (U.S.S.G. § 4A1.2(d)(2)(A)) |
| 2019-DEL-000670 | Washington, D.C. | Sex Assault (First Degree) | 2 points (U.S.S.G. § 4A1.2(d)(2)(A) |
| 2019-DEL-000572 | Washington, D.C. | Robbery | 2 points (U.S.S.G. § 4A1.2(d)(2)(A)) |
| TOTAL | | | 7 points |

In the PSIR, the probation officer disagreed with the United States's scoring of the defendant's juvenile sentences in case numbers 2019-DEL-00572, 2019-DEL-000670, and 2019-DEL-001309, and she assigned each sentence zero points. (ECF No. 28 at 8-11). In reaching this conclusion, the probation officer provided additional details in the PSIR about the defendant's DYRS commitment that were not stated in the DPSIR. In particular, the PSIR noted the specific

dates of defendant's secured detention and unsecured placements for each of the relevant sentences.[5] *Id.*

Based on a review of this additional information, it appears that while the defendant was confined[6] for at least sixty days in the Youth Services Center during each sentence, he was released from such confinement more than five years before his commencement of the instant offense (August 1, 2025). Specifically, in each case, the defendant was released from the Youth Services Center on April 14, 2020, and he was then placed in an extended family home until the conclusion of his commitment. *Id.* While in the extended family home, the defendant was not in secured detention, and thus, was not "confined" for purposes of U.S.S.G. § 4A1.2(d)(2)(A). Consequently, the United States agrees with the PSIR calculations, which state that the defendant's: (i) total offense level is 23; (ii) criminal history score is 2; (iii) criminal history category is II; (iv) guideline imprisonment range is 51 to 63 months; and (v) supervised release term cannot exceed 3 years. (ECF No. 28 at 14, 25). The United States will next address the § 3553(a) factors within this guideline range.

### B.  The Nature and Circumstances of the Offense

The nature and circumstances of the offense support a sentence of 63 months of imprisonment and 3 years of supervised release.

---

[5] The probation officer also added one point for the defendant's sentence in D.C. Superior Court Case No. 2023-CMD-004817 (Attempted Threats to do Bodily Harm), where he received 45 days jail. *Id.* at 12; *see also* U.S.S.G.§ 4A1.1(c). While the parties did not account for this sentence in their plea agreement, the United States agrees with the probation officer's conclusion here.

[6] The United States respectfully disagrees with the probation officer's position that the defendant's commitment to the Youth Services Center at the DYRS was "merely a placement decision" versus a "sentence to confinement[.]" (ECF No. 28 at 30). Nevertheless, because the defendant was released from this facility more than five years before his commencement of the instant offense, U.S.S.G. § 4A1.2(d)(2)(A) does not apply.

During the evening hours of August 1, 2025, the defendant entered a Scott's Beauty Supply store wearing a mask and armed with a weapon. The defendant had a clear plan at this time: secure everyone inside so that his co-conspirator could steal from the store's cash register. And that is exactly what the defendant did. Upon entering the establishment, the defendant immediately pointed a firearm at one of the store employees and ordered the employee and three other innocent people (a mix of customers and another Scott's Beauty Supply worker) to the ground. At one point, the defendant even pressed his gun to the back of a store employee's head to ensure his compliance. This conduct allowed his co-conspirator—who was notably unarmed—to then demand cash from another store employee before the pair rushed out of the establishment just minutes later.

This event would likely not have transpired without the defendant's role as the enforcer during the robbery. Mr. Carr was the only assailant with a firearm, and his use of that gun furthered the offense by ensuring that nobody would interfere with the conspirators' plan. Moreover, the defendant's acts also show a callous disregard for human life. Mr. Carr was so desperate to obtain money that he was willing to point and use a firearm against several people, thereby placing them in severe danger. The defendant did not care about the victims' safety and wellbeing, and he was only focused on enriching himself to pay off a purported debt.

The defendant's role in the crime, selfishness, and indifference to the safety of others should be alarming to the Court and weigh in favor of the requested sentence.

C. The Defendant's History and Characteristics

The defendant's criminal history, mental health history, behavior problems in school, and substance use, all support the requested sentence.

First, the defendant's criminal history shows a pattern of unlawful conduct with minimal repercussions. For example, the defendant has the following criminal convictions and

9

corresponding sentences:

- In 2017, the defendant pled guilty to unlawful entry and destruction of property less than $1,000, and he was committed to the DYRS for two years (unrestricted). (ECF No. 28 at 6) During his commitment, the defendant physically assaulted one of his therapists.

- In 2019, the defendant pled guilty to robbery and was committed to the DYRS for one year and four months (unrestricted). *Id.* at 8.

- In 2019, the defendant pled guilty to assault with intent to commit first degree sex abuse and was committed to the DYRS for one year and six months (unrestricted). *Id*. at 9. According to DYRS records, the defendant tried to force two separate women into sex acts and physically assaulted each victim. *Id.* at 10.

- In 2020, the defendant pled guilty to aggravated assault and was committed to the DYRS for one year and six months (unrestricted). *Id*. at 11.

- In 2024, the defendant pled guilty to attempted threats to do bodily harm and was sentenced pursuant to the Youth Rehabilitation Act to 45 days of jail, suspended, and one year of probation. *Id.* at 12. Due to a subsequent probation revocation, the 45-day jail sentence was imposed. *Id.* According to the Gerstein Affidavit associated with this case, the defendant threatened to: (i) blow up a restaurant in Washington, D.C.; (ii) rob the establishment; and (iii) kill people at the location. *Id.* at 13.

- In 2025, the defendant pled guilty to attempted threats to do bodily harm and was sentenced to 45 days of jail. *Id*. at 13. According to the Gerstein Affidavit associated with this case, the defendant physically assaulted his ex-girlfriend, threatened to kill her, and threatened to burn down her residence "with everyone in it."[7] *Id.* at 14.

In addition to these convictions, the defendant has also been arrested several times for violent offenses (assault with intent to commit robbery, assault on a police officer, simple assault) and property offenses (destruction of property and theft second degree). *Id*. at 14-16.

Second, the defendant's mental health history shows that he poses a continuing danger to

---

[7] On January 30, 2025, a civil protection order ("CPO") was granted on behalf of the victim against the defendant. *Id*. at 17. According to the CPO, the defendant is to have no contact with the victim and must, among other things, stay 100 yards away from her. *Id*. This order is in place until January 29, 2027. *Id.*

those around him if released.[8] For example, according to one of the defendant's former Court Appointment Special Advocates, Mr. Carr has "zero impulse control and zero ability to manage his emotions and is in need of fairly intensive supervision and guidance moving forward." *Id*. at 20. Additionally, the defendant's risk of sexual recidivism is "moderate to high risk," and his sexual offense history indicates the presence of risk factors such as the use of excessive force and violence, multiple victims, and one stranger victim. *Id*. at 22.

Third, the defendant has exhibited a lack of control at school and during his DYRS placement. According to the PSIR, the defendant was suspended while attending LaSalle-Backus Education Campus in Washington, D.C., for truancy, attending school under the influence of marijuana, and disrupting the classroom. *Id.* at 23. He also exhibited behavioral problems while attending New Beginnings Academy (in secure DYRS placement) and Coolidge High School, including threatening teachers, pushing a teacher, urinating on the football field, and fighting. *Id.*

Fourth, the defendant has a history of substance use. According to the PSIR, the defendant has been smoking marijuana since he was a kid. *Id.* He has also reported a history of using more serious drugs, such as Xanax. *Id.* The defendant's abuse of these substances will only exacerbate his criminal proclivities and mental health issues.

In all, the defendant's history demonstrates that prior leniency has failed, and, without serious programming and treatment, the defendant is going to commit more crimes when he is released back into the community. To ensure that this does not happen, and to protect others from his violent tendencies, the Court should sentence him to the high end of the applicable guidelines followed by three years of supervision.

---

[8] To protect the confidentiality of this information, the United States only highlights some of the relevant findings for the Court's consideration.

11

**D. The Need for the Sentence Imposed**

The requested sentence is sufficient but not greater than necessary to meet the goals of sentencing. Specifically, a sentence of 63 months of imprisonment and 3 years of supervised release will reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide just punishment for the defendant's crime. The additional period of supervised release will also ensure that the defendant is held accountable after his term of incarceration should he reoffend.

## V.     CONCLUSION

For all the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 63 months of incarceration followed by 3 years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     /s/ *Joshua Satter*
JOSHUA SATTER
Assistant United States Attorney
N.Y. Bar No. 5477112
601 D Street NW
Washington, D.C.
(202) 252-7566
Josh.Satter@usdoj.gov